NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240388-U

NOS. 4-24-0388, 4-24-0389 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 30, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| ANTONIO COUSINS JR., | ) | Nos. 21CF834 |
| Defendant-Appellant. | ) | 21CF835 |
| | ) | |
| | ) | Honorable |
| | ) | John P. Vespa, |
| | ) | Judge Presiding. |

_____

JUSTICE KNECHT delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court abused its discretion in denying defendant pretrial release.

¶ 2    Defendant, Antonio Cousins Jr., appeals the trial court's order denying his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963, hereinafter as amended by Public Acts 101-652, § 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023) (725 ILCS 5/110-6.1 (West 2022)), commonly known as the Pretrial Fairness Act. We reverse and remand.

¶ 3                          I. BACKGROUND

¶ 4    This appeal involves two cases consolidated for appeal. In Peoria County case No. 21-CF-834, the State charged defendant with aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2020)) and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). In Peoria County case No. 21-CF-835, the State charged defendant with unlawful possession of a

weapon by a felon (*id.*), unlawful possession of firearm ammunition by a felon (*id.*), and armed habitual criminal (*id.* § 24-1.7(a)). His bond was set at $150,000, at 10%. Defendant did not post bond.

¶ 5        On December 19, 2023, defendant filed a *pro se* motion for pretrial release, to which the State responded with a verified petition to deny defendant pretrial release. In its petition, the State asserted, by checking boxes on a preprinted form, defendant was charged with detainable offenses and his release poses a real and present threat to the safety of any person or persons or the community. The State further asserted defendant should be detained under the willful-flight standard. On the form petition, no box provides the State with the option to allege no condition or combination of conditions can mitigate the threat defendant's release poses. The State did not add that allegation.

¶ 6        The detention hearing began on February 27, 2024, and was continued until February 29, 2024, to resolve a question of the number of defendant's failures to appear. We note the pretrial services report lists three failures to appear but the parties ultimately agreed defendant had only one. At the hearing, defendant appeared *pro se*. The State began by listing the charges against defendant and the potential sentences for each charge. The State did not provide a factual summary of those charges. The trial court asked for the pretrial services report. The report was completed on December 28, 2021. Defendant earned his GED while in the Peoria County jail in 2014. He was unemployed and resided with his girlfriend. The Revised Virginia Pretrial Risk Assessment Instrument identified defendant's risk of pretrial misconduct as a 9, in the range of 0-14. Defendant had a 93% probability to appear for all future court hearings and a 90% probability of no new offenses. We note these percentages appear in the same report that lists defendant with the incorrect number of failures to appear.

¶ 7    Defendant stated he wanted to be released so that he could go to school to be an accountant and an auto mechanic. He wanted to get employed and start anew. When he asked the trial court to give him "a second chance," the court stated the following:

"Well, there is that phrase 'second chance.' Someone with three priors should be asking at a minimum for a fourth chance. Nobody asks for fourth chances. When have you ever heard anybody—I'm asking anybody in this whole courtroom, when have you ever heard of someone asking for a fourth chance? I bet you all would say zero because that doesn't sound very good. Second chance, oh, come on, everybody deserves a second chance. Well, your second chance was three chances ago, which doesn't mean you get denied. I haven't gotten to that part yet."

The court then questioned defendant regarding the pretrial services report.

¶ 8    The trial court then summarized defendant had three pending cases, the two involved in this appeal and unlawful possession of a weapon by a felon in Peoria County case No. 20-CF-452. The court noted defendant was facing "a lot of weapons charges" and had three prior felonies, as well as one failure to appear. The court asked the State for defendant's criminal history. The State explained defendant was convicted of residential burglary in Peoria County case No. 10-CF-917, for which he was sentenced to 54 months' imprisonment. Defendant had a 2014 conviction for unlawful possession of a weapon by a felon, for which he received a three-year sentence. Defendant also had a 2016 conviction for unlawful possession of a weapon by a felon. For that conviction, he was sentenced to seven and a half years' imprisonment.

¶ 9    After hearing the State's summary of defendant's criminal history, the trial court

informed defendant it did not sound like he was a good risk:

> "You don't sound like a good risk. You have these weapon offenses prior convictions and you got current weapons offense charges. So much so that you're being labeled an armed habitual criminal.
>
> If I let you out, some people would say, what? You let him out? A lot of people would say that. Fend them off for me."

Defendant explained he was employed when he was arrested and had his GED. Defendant stated, if the court would give him the opportunity to improve himself, he would appear for the court dates. He explained his lone failure to appear occurred 14 years earlier, when he was 17. The court responded, in part, "Fourteen years ago you didn't have any felony prior convictions. Since then you have three. You're going downhill [the State] says. What do you say to that?"

¶ 10 The trial court asked the State for an explanation as to why the cases remained pending. During that discussion, the State mentioned a motion to obtain fingerprint samples. The State wanted fingerprints to lay the foundation to identify defendant's latent print on the magazine found near defendant. The court granted the State's motion.

¶ 11 The trial court then returned to the issue of defendant's detention. The court stated the following before granting the State's petition:

> "You've got three prior felony convictions. If you get convicted on any of these, you go to prison. Probation is not an option. You have reason to flee.
>
> Now you've got two unlawful possession of a weapon priors, excuse me, unlawful possession of a weapon by a felon prior convictions and that is part of the current charges. Included in

the current charges are a claim that you're an armed habitual criminal. And a claim of unlawful discharge of a firearm. These are explosive—and no pun intended. These are explosive charges where like I said ten minutes ago if you get out people are gonna say who is the idiot judge who let him out with all those circumstances being there? Of course, he is a flight risk. Probation not being an option, and, with his past and with his current charges pretty much matching his past convictions.

Now he has failed to appear in court before. Now—

\*\*\*

\*\*\* You are charged with the offenses that qualify for pre-trial detention. In other words, these are detainable offenses. I'm granting the State's verified petition to deny defendant pre-trial release."

¶ 12　　　　　The trial court, on February 29, 2024, issued a written order detaining defendant. The order is a preprinted form. The court checked the box next to "Dangerousness Standard," by which the court found "the proof is evident or the presumption great that the defendant has committed a qualifying offense," "defendant poses a real and present threat to the safety of any person or persons or the community," and "no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons." The preprinted form does not contain options for an explanation for the finding no condition or combination of conditions can mitigate the threat.

¶ 13　　　　　This appeal followed.

¶ 14                                         II. ANALYSIS

¶ 15            On March 4, 2024, defendant filed a notice of appeal challenging the order

denying him pretrial release, and on April 15, he filed a memorandum under Illinois Supreme

Court Rule 604(h)(7) (eff. Apr. 15, 2024). Defendant's notice of appeal is a completed form

from the Article VI Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. R.

606(d) (eff. Dec. 7, 2023)), by which he asks this court to overturn the order denying his pretrial

release. The form lists several possible grounds for appellate relief and directs appellants to

"check all that apply and describe in detail." Defendant checked multiple grounds for relief and

provided argument under each. Under one of the preprinted claims, defendant wrote, "[T]he

defendant is eligible for all the condition or combinations of conditions of PreTrial Release and

the court didn't consider the factors of GPS Monitoring, Electronic Monitoring, or home

confinement for his current charges." Defendant further asserted the State did not meet its burden

of proving no condition or combination of conditions could mitigate the threat.

¶ 16            In his supporting memorandum, defendant argued, in part, the State did not meet

its burden of proving no condition or combination of conditions could mitigate the threat.

Defendant highlighted the trial court did not address this element either, and, therefore, there is

no explanation for its determination this element was satisfied. In its appellee's brief, the State

did not directly address defendant's assertion the conditions element was not proved or

sufficiently found but contended the decision to detain was supported by the record.

¶ 17            We agree with defendant. Perhaps due, in part, to defendant's *pro se* status, the

detention hearing proceeded in a nontraditional manner. The court questioned defendant as he

proceeded, disputing defendant's contentions. The State did not make a proffer or argument on

the matter of defendant's detention. Instead, the court, in between questions to defendant, asked

the State for information on defendant's criminal history and on the history of the case. In addition, the court, mid-detention hearing, granted the State's motion for fingerprint testing. As no argument was made by the State, we are left with the State's petition, in which the State also did not assert no condition or combination of conditions can mitigate the threat. At no point was this issue of conditions raised by the State or addressed by the trial court. The court's lone mention of the factor is the checking of the box next to "Dangerousness Standard" on the preprinted form, under which is a finding the conditions element was satisfied.

¶ 18     While the evidence may have been sufficient to find no condition or combination of conditions can mitigate the threat, "we cannot supply the missing conclusion." *People v. Martin*, 2023 IL App (4th) 230826, ¶ 24. The question of release conditions is a matter that must be provided by the State with clear and convincing evidence. 725 ILCS 5/110-6.1(e)(3) (West 2022). It must also be addressed by the trial court. *Martin*, 2023 IL App (4th) 230826, ¶ 24; see also 725 ILCS 5/110-6.1(h)(1) (West 2022) (directing trial courts to "make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons"). While, in certain circumstances, a checked box on a preprinted form may be sufficient to prove the trial court considered this factor, it is not sufficient here, as no mention of pretrial-release conditions was made in the verified petition or at the hearing. Moreover, the checked box was one for the entire "Dangerousness Standard" generally and not for the conditions element specifically. As a result, the trial court abused its discretion in detaining defendant. See *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11 (setting for the abuse-of-discretion standard as the applicable standard of review for pretrial-release findings).

¶ 19     Because we find a new hearing is required, we need not consider defendant's

remaining challenges to the detention order.

¶ 20                                III. CONCLUSION

¶ 21            We reverse the order denying defendant pretrial release and remand for the trial

court promptly to set a new detention hearing, at which the State may present evidence and the

court can make the requisite findings.

¶ 22            Reversed and remanded with directions.